All right, please be seated. Thank you, everyone. Back on our game with the third case of the day. 23-13-134 Katebian v. Ogier. I hope I'm pronouncing both of those names correctly. I have Mr. Robel here for the appellants, Mr. Rothschild and Mr. Capriola here for the lees, respectively. All right. Mr. Robel, whenever you're ready. May it please the Court, Michael Robel for the appellants Payam Katebian and Mortiza Katebian. We're here on my client's appeal from the district court's decision not to hear the merits of their appeal from a bankruptcy court order by invoking the principle of equitable estoppel with regard to a bankruptcy court order that provided for three different things, only one of which is challenged in the appeal to the district court. What's the standard of review? Because it looks like we've got — well, what would you say is the standard of review? I guess I just want to be clear. Are we looking at an abuse of discretion here, given the status? Yes, Your Honor. I believe in their briefs all the parties indicated it was a de novo standard. I am familiar, of course, with the discretionary standard, the abuse of discretion, sometimes applied to somewhat similar situations. I think even under an abuse of discretion standard it would be inappropriate for the district court to have refused to hear the merits. And we cited this in our brief to the district court, indicating that the abuse of discretion standard, an appeal cannot survive even under that standard when there was no evidence in the trial court record to support it, and that was what we argued in the district court, that there was no evidence put on before the bankruptcy court that would justify the claim amount and the resolution of the disputes. And keep in mind, there were nine objections, motions, and briefs filed in the bankruptcy court objecting to the claim that the district court allowed. So those nine different arguments against that proof of claim, which the trustee even indicated at the hearing on the motion to approve the settlement, she believes should have been resolved at a lower amount. She stated it should have been resolved at about $3.2 million, whereas the court resolved it at $3,999,000. There was no evidence presented in the form of testimony or any kind of probability about the trustee prevailing or not prevailing on the claim dispute. So — Can I ask you a quick question? You just mentioned equitable mootness there at the outset. And I'll just confess to a little bit of uncertainty here. But so everybody seems to be — the district court, you guys, everybody seems to be talking about equitable mootness. But there's this provision, 363M, which seems to me like a statutory mootness rule. Why aren't we talking about that? The order appealed from did three things. It authorized a loan to purchase an HVAC chiller with some debtor in possession financing. That has its own bankruptcy code authorization by statute. The order also authorized a sale of an office building. That is what was authorized under Section 363. Right. And 363M provides that regardless of whether this court would reverse on appeal or vacate on appeal, that the sale remains valid. So the buyer is entitled to keep the office building. We're not trying to disrupt this unrelated buyer keeping the office building they purchased. And that's what 363M effectuates by statute. The only portion of the order in dispute is allowing a claim, which my clients contend is $600,000 above the highest it could possibly be. But doesn't so our recent decision in Stanford, doesn't Stanford suggest that 363M is not just about unwinding the sale entirely, but also like tweaking the terms of the sale? And I think that gets to the heart of this case, Your Honor. I believe that what the appellees are arguing is you can't disturb part of this order. It would disturb the whole order. What my clients are arguing is these were three separate things that the court did. The court said them all in one order, but approving a dip loan to the debtor, which would still be owed by the debtor regardless of the sale or regardless of the other aspects of the order, that was not dependent on approving the sale of the office building. So in this instance, you can. We're saying they're not inextricably tied together, that those were divisible promises. They're not indivisible. So I think that case would be different in the sense of a factual finding needing to be made. And what I would point to in the record or the absence in the record, there's no settlement agreement as far as I've seen in the record, which would have been between the two appellees, the Chapter 11 trustee and the lender. There's no actual settlement agreement in the record where they're saying each of these promises depends on the others. We're not doing this promise if we can't have this promise. And second, there was no testimony put on when the court approved the settlement where the party said, we're not doing this one part of it if we can't have the other two parts of it. Did your clients object to any of that at the bankruptcy level, though? And again, because they did not oppose the sale and they did not oppose the financing for the HVAC, they did not object to those. They did object to the settlement allowance of the amount of the claim, which is the sole issue they're appealing on. But just so I understand, your response to me with respect to 363M is, if the only thing that the sale order authorized was the building, then Stanford might be on point and to the extent that it we're seeking to tweak the terms of that sale, it's statutorily moot under 363M. But because the same order does these other things, it's not moot as to those things or it's not statutorily moot at all? I'm not trying to confine Stanford to situations where the order only deals with the sale of real property. I would recognize there could be other things in an order that were so dependent that it's possible that 363M protects all of it as part of the same sale. In this instance, there was actually a separate sale order later on. The order that was appealed from was entered in July of 2022. They didn't make the motion to approve the sale because they did a marketing period after the settlement was approved for many months. They didn't make the motion until in 2023. So it was in the following year that they actually sought to approve the sale. And I would also point out in terms of the equitable mootness, at the time they did the sale and made the credit bid, we had already appealed to the district court. So they went forward knowing their claim was still in dispute after the nine challenges to it in the bankruptcy court. So they had an awareness. And one of the things the district court mentioned was that we could have moved to expedite the appeal in the district court. That same relief was available to the lender and the trustee in the district court. What the bankruptcy court cited, or district court cited, which is Bankruptcy Rule 8013A1B, is not restricted to appellants. The appellees also could have moved to expedite, knowing that the validity of the claim or the amount that the claim was being challenged before the sale happened. So I think that usually... But their failure to do that didn't negatively impact them the way it's impacting you, right? Each side is claiming a negative impact. They're claiming they wouldn't have gone forward with the sale if the court hadn't authorized the amount of their claim. My clients are claiming that they're hindered or impacted to the tune of $600,000, that that's how much the claim exceeds the valid amount of the loan balance. I thought you were speaking to the issue of the stay or failure to seek one, which served, I think, as a major foundation for the district court's decision to reject your request. Well, I'm speaking... I guess the district court, I think, cited two different things. One was you can seek a stay. The other is you can seek to accelerate the appeal. In terms of accelerating the appeal, Bankruptcy Rule 8013, which is applicable in appeals from bankruptcy orders, would let either the appellant or the appellee seek to accelerate. It's not limited to appellant only. So to the extent the district court was saying a party could have moved to accelerate, I'm saying that shouldn't be held against my client. If they knew their claim was being challenged, the claim amount before they went forward, they could have accelerated likewise. I guess I'm just understanding that it seems like the failure to take that step had more of a detriment to your client than the other. But maybe that's an unimportant factual distinction. Well, I guess, Your Honor, we're contending that it was improper for the district court to find it equitably moot when the district court is simply... And I think equitable mootness should go more to the harm, or is it possible to unscramble a scrambled egg, to use the analogy that shows up in a lot of the appellate case law, and less to the time. It's not so much the passage of time as what was the impact from the passage of time. And we are contending you can unscramble the egg because we view the order as divisible, that the loan to purchase the HVAC chiller is still in place. It's still an obligation. The sale of the property is undisturbed due to 363M. The buyer gets to keep it. So that's not at issue. The only thing is the amount of the credit bid, the amount of the claim. And that only impacts the lender and the guarantors. So this is not something that's going to affect other creditors, that's going to affect the purchaser of the property. So in terms of unscrambling a scrambled egg, there was very little scrambling in the first instance. Well, I guess... So let me make sure. So essentially what you're arguing is that your client should be able to get more money, or at least not be in further debt as a result of this sale. And you're saying that you can unscramble it, except that it sounds like the trustee would have taken into consideration that additional amount before executing the sale. So I still don't see how it's — how this doctrine doesn't apply. Well, the attorneys are arguing that's what happened. We see a lot of argument in the appellate brief saying they relied on that. I don't see that in the record. There's not a settlement agreement saying these promises are indivisible. There's also no testimony at the hearing approving the settlement saying these promises are indivisible. So the lawyers are now saying, we don't want you to divide these up. That will hurt us. But there's not evidence in the record they relied on this at the time that it happened. And we are pointing out procedures by which they could have avoided that, which I think cut both ways, could have applied to my client or could have applied to the appellees in front of the district court. But what we're essentially saying is the district court, by focusing so much on whether there was a stay or an expedited request, really more procedure and time, didn't look so much at the harm, which is what you're actually trying to get to with equitable mootness. If someone harmed, they go so far down the road it can't be reversed. And in a Chapter 11 bankruptcy, you always have claim determinations. You're always trying to find out, is the claim amount overstated, understated, valid? That does not impact other people. That's just to be decided between the lender and my client without disrupting the sale or what happened with the HBAC system. So we're contending there was not a scrambled egg to unscramble, that this is something that could normally occur in a bankruptcy proceeding and should occur, because my clients will be harmed. We lay out over four pages in our brief to the district court how it's a $600,000 difference between the amount the bankruptcy court allowed and what should have been allowed under the loan documents and applicable law. Okay, very well. We've got your opening argument. You've got five minutes of rebuttal remaining. Mr. Rothschild, are you going first? Five minutes, okay. Bill Rothschild, I represent Tamra Jere. My partner is the trustee. I'm going to give you an overview. Mr. Capriola, who represents the creditor, will then take over. To jump ahead of where I was going, it's one integrated deal, and Mr. Capriola can show you how. But I don't think we get there, because I don't think you all have got jurisdiction. What is at issue, this gets back to our motion that the panel, the first panel, sent to you all, that if you look at the creditor's statement of the case, their issue is, and the only issue here is, the creditors of the case will get more money if this happens. They don't have an issue that they'd be better off as guarantors, because the Justice Oaks case says very clearly there's no res judicata effect of this settlement. If they get sued on their guarantee, they can argue anything they want to do. So, as they correctly put here, the only issue is, are they creditors of this case? What happens to the creditors of this case? The point that we made in that motion is, as a contract matter, and I'll grant that you're all the best contract lawyers in the room, as a contract matter, they contracted away their rights to be creditors in the case within the guarantee. That's the motion. That is a provision that came up. I could tell you why and how it came up in bankruptcy history, but it doesn't matter to you all, because the language of the contract is clear on its face. So, my request there is just go back and look at that, and if you agree with me, then that's how the case ends, and I'll go on to the merits now. So, let me ask you just a quick question about, because I think when you say you don't have jurisdiction, you're saying that there's no standing, right? Correct. There's no standing, because you can give no relief that's going to help them. So, what about the fact that there is a secured piece of this debt and an unsecured piece of the debt?  Right? The 3.99 is the secured piece of the debt, but then there's about $700,000 outstanding that's unsecured. Correct. Why does that outstanding piece of the debt not confer aggrievement in the terminology on them? Give me a second, because now I'm not thinking clearly. I might not be thinking correctly.  I think I get it. For the standing argument, it does, but they don't have a right to it because they're not unsecured creditors, because they contracted away the right to be unsecured creditors. And just explain that to me. I'm so sorry. Okay. If I'm the best contract lawyer in the room, you're the best bankruptcy lawyer in the room, so explain that to me. Okay. There was a case in the late 1980s where secured lenders got hurt, not because they were insiders, but because they had contracts of guarantee, and the guarantors were insiders. So they began putting provisions in a contract which said to get away with the problem where the guarantor promises, I won't subrogate, I'm not a creditor in the case, I've got nothing to do with the case. Now, take that a step further. Congress tried to solve that particular problem on preferences in the 1990s, failed. I think in the 2005, it succeeded. I see. So you're referring, as you do in the brief, to these provisions in provision 7 of the guarantee contracts? I think so, yeah. Okay. So I see your point about 7D seeming to waive subrogation, but subsequent provisions 7P and 26C both seem to limit the waiver of subrogation until payment in full is made. So why wouldn't they have, like, a contingent interest in subrogation on the unsecured piece of the debt after the full payment? Because payment hasn't been made in full. Not yet. But that's why I say it might be a contingent claim. And because under Georgia law, they only get a subrogation right under Georgia law when they make a payment. They haven't made any payments. But might they? I beg your pardon? Might they be called upon to make a payment, at which point this contingent interest would have been right? If they get called upon to make a payment, they can make the same arguments then that they're making here because nothing here binds them there. They can make the argument that this is a settlement, not a finding in a court. I guess, and maybe it goes back to something you said earlier, though, like, as a matter of standing, are they not, is that contingent interest not impaired now, sufficient to give them standing? They might lose. No, because they get a right to argue it. I've got a problem. I've got two quick points. I wanted to make. I never got to. Can I make them? Let's give you one minute. You can speak like an auctioneer. Okay. If it's all one deal, you really get into equitable estoppel. Judge Legola, by the way, had an opinion yesterday that had the point in it. And if I can find it, I can quote from her. If she cited an earlier case, equitable estoppel precludes the party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens of other provisions of the contract. So if it is all one contract, that's what they're trying to do. But you have a bigger problem before that. A court in a settlement does not have the power to say, I'm going to tweak this provision, and then the settlement's going to go through. A court can say, if you don't bring that number down, I won't approve it. But a settlement is, by definition, a contract between the parties that is approved. And a court does not have the power before the fact or after the fact to say, I'm going to approve it, but I'm going to change something over your objection. And that's in the briefs. And that's a pretty simple case. The final point is, as you mentioned, is the point that it's the law of the case and the sale order. And this comes back to the difference between the parties. Our point is, it was all one integrated point. And Mr. Caprio is going to say that about how, that he wouldn't have lent, his client wouldn't have lent the money here if that, okay, whatever it is. If that's the case, this case is over at that point. And the reason is that they're trying to tweak one aspect of the sale but not the other. And just a final point, if I could. I mentioned this matters to my client. If this case is overruled, then we don't see how any trustee can ever get a settlement that is complicated and has steps in these three states. Because the lender's going to say, I'm going to get sued later. So, let's just have the trial however many days it takes to figure out what my number is because if the court's going to find it for a settlement for these purposes under the Justice Oak provisions, I can get sued two years down the road. So, that's why it matters. That's why you have a trustee who's not saying, wait a minute, I'll get more money if I lose while he's standing up there. Okay. Very well. Thank you so much. Thank you. Appreciate it. Yeah, absolutely. All right, Mr. Capriolo. Got 10 minutes. Good morning. May it please the Court. Rich Capriolo for Appellants, 1590 Adamson and 1590 Adamson Dip, LLC. The district court got it right. This case is barred by the concept of equitable mootness. Before we get into equitable mootness, can you just help me untangle my brain about this statutory mootness issue, this 363M? Yeah, and like you said, the best bankruptcy lawyer in the courthouse just sat down, so I do not profess to be that person. But looking at the face of the document, at the face of the statute, it appears that it would apply to the entirety of what that statute spoke to, which are these settlements under that provision. This whole settlement was under that provision, and tweaking any portion of that would appear to be covered by the statute, 363M, and you cannot modify it so to kind of knock the tires out from under it. So that would be my take on the statute. I am not familiar with the Stanford case that you cited. I have not read it, so I won't comment on it. Yeah, I guess I just don't know, and I'm not asking you to tell me since you've said you're not familiar with it. I guess I just don't know whether Stanford in this case are exactly like one another in the sense, or are they different in the sense that Stanford was, I'll call it, maybe I'll call it like sort of like a one-shot deal. It's only about the sale, and here we've got an order that's maybe more integrated. It's about the sale and a couple of other accoutrements attached to it. And I can't quite tell if the other side is saying like, well, it might be moot as to the sale piece of it, but it's not moot as to the other pieces of it, statutorily moot. And I'll have to pass on that. OK, we'll figure it out. What about the standard of review issue? Because it seems like we've got one case that says de novo, another one, abuse of  Even Markstein, which I don't think supports the proposition for which they cited it, also suggests that the court employed an abuse of discretion. So how are we supposed to evaluate this? We believe it's de novo, reviewing the cases that we've seen, that the standard is de novo. And I believe the parties are in agreement. Obviously, the court will decide that. It is because the court did not get to the merits. I know that that is something that the Supreme Court has looked to very carefully, and we believe the standard would be a de novo. And when you apply that standard here, we believe that the district court, in fact, got it right. The concept that this settlement, and that's what we're here about, right? This is the sanctity of a settlement. That's really what this case boils down to. Unlike any other case that has been cited to you in the briefs about equitable mootness, this case seeks to cherry pick a settlement apart and let a party who sat on the sidelines, let the whole process play through, let it get sold, let a million dollars plus be put in dip money, let a new chiller be put on the building, all these great things to improve this asset, sit back and take no action and then come back and say, you know, out of that settlement that had these ten different things, that one right there is the problem. Now, no court, the Eleventh Circuit, has said that you can do that. In fact, they said courts cannot rewrite a settlement agreement. And to do what the appellants are asking you to do is to rewrite the settlement agreement after the fact. The concepts in that — in the order state that they are there by stipulation of the parties and the court hereby orders as follows. And they are not only that this property is going to be sold by a — through this process of sale and marketing, but that the agreed secured claim amount is X, that the dip money is a condition of this, that the — my client would only put new money into this property to protect it if the rest of these terms were accepted. That is in the term sheet. That is attached to the motion. It's in the motion. And the order lays out all of the terms that the parties have agreed to and states them. What they want to do is say, well, there's been an overbid because you're — you didn't really have that secured claim amount. Well, my client would have never bid an overbid unless they were directed by the court to bid this amount because this is your secured claim. So what they're saying is there's an overbid because you relied upon the settlement, but you can't rely upon the settlement because we're able to come back after and pick it apart. And that is why equitable mootness applies here. If they were going to make that argument, they should have stood up and stopped the sale. They had one year from the date that the court first approved the settlement until the actual closing of the transaction at any point in time to stop that sale. They never asked the trial court — the bankruptcy court. They never asked the appellate court. And why? Because they have admitted that they didn't want the sale to be stopped. No one got in their way of asking for an injunction to stop the sale. They wanted it to go through, and they apparently intended to then come back after and say parts of your settlement are improper and we want to challenge those. That's not allowed. Supreme Court has said you can't — a court cannot undo a settlement. The district court used some great language saying that they would force terms on a party to which they did not agree and from which they can no longer retreat. So we are here to — well, we are here to enforce that concept that settlements are to be given their meaning and not be rewritten by a court. The — Can I ask you just a question about the scope of the equitable mootness doctrine? This may be a stupid question, but — so we've said that equitable mootness applies at least to orders confirming plans of reorganization and to appeals that, quote, effectively seek to modify or amend a plan's provisions. Does it likewise apply outside the plan of reorganization context? It does, Your Honor. The concepts are the same there, and the plans of reorganization are all agreed settlement between the parties put into a plan. We see no reason for the equitable mootness doctrine to be applied differently in that context. But would we be breaking new ground in extending it outside the plan context? I don't think so, Your Honor. I think it — because they're settlements in bankruptcy court, I believe that they would be treated one and the same. Do I know if there's another case on point that draws that distinction out? I don't. I would not be surprised, though, if some of the cases dealt with, you know, a settlement as compared to a confirmation of a planned settlement. Again, I guess the reason I ask is that I — maybe I'm just speaking for myself, but I think courts are generally reluctant to expand or to extend doctrines that feel a little made up, and I don't mean that derogatorily. But even as you read the language that I was just reading from a recent case of ours, it seems to be suggesting that, like, we've done it here, and we've also done it here, and there's just this implication that there's some reluctance to extend it into new territory. And this is one reason I was asking about 363M, to what extent that's sort of like part of equitable mootness or if it's really its own thing that would apply seemingly to me more squarely to this situation. So let's just assume that there's a concern there. There's still this concept that I think is the backstop of all this, that there's a settlement, and what they're asking this court to do is change the settlement. Whether you approach it from equitable mootness, you approach it from 363M, there is no way a court can rewrite the settlement after the fact. And it goes then to jurisdiction of the court along the lines of what the Appellant's prior counsel was arguing. So you get to the same point no matter which path you take. I believe that the equitable mootness doctrine is on all fours with what happened here. It's just the title of the document was slightly different. One was the plan and one was a settlement under 9019. So the Marstein case, the main case upon which they rely, there was no settlement in that case. The court, this court said, you know what, we cannot undo the settlement agreement, the plan, the settlement agreement that was in the form of a plan, but we can still send it back because the amount of the claim had not been decided below. The transcript did not show that the court decided the amount of the claim, and because it was very narrow relief, which was not part of any settlement agreement, and had not yet previously been decided, this court sent it back down so that the trial court, the bankruptcy court, could make that determination. They're trying to shoehorn this case into that one and it doesn't fit. This is a settlement case. All the terms have to be upheld and we ask that the court confirm and do that.  Okay. Very well. Thank you. Thank you so much. All right. Mr. Robel, you've got five minutes remaining. I'd like to start by going briefly back to 363M. I think the actual language of that statutory section gives us guidance on whether it could be applied to the entire settlement, which had components beyond a sale of real property. And this is, of course, Title 11 of the United States Code, the Bankruptcy Code, where 363M states the reversal or modification on appeal of an authorization under subsection B or C of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal and less such authorization in such sale or lease for state pending appeal. So it's very focused on real property and it seems to be getting to whether the party purchasing is going to be harmed. And again, in this instance, that's not something that's in play. We've never challenged, we've never opposed the sale of the real property. There was the 363M finding, which basically means the sale was made in good faith, that there was not collusion between the buyer and the seller. That's the factual predicate for the 363M finding. And that narrow wording of it that it has to do with a sale or lease of property and that the appeal, the modification on appeal, does not affect the validity of the sale or lease under such authorization, I think confines the scope of what can be done under 363M to a more narrow range than the equitable mootness concept. So does that mean that you would agree that 363M statutorily moots a challenge not only that would seek to unwind the sale, which I understand you're not saying, you're saying we're not trying to unwind the sale, but also that might retroactively change the terms of the sale? I think that's correct. Okay, so you would agree that that much of the case is statutorily moot and now the question is whether the periphery of that order, the other stuff, is challengeable. I think that's right. I think it goes back to where I started in my initial argument that it comes down to are all of these things in the order inextricably dependent on one another or can they be divisible? Which their contention obviously is they're not divisible and that's what I think is lacking in the record. There's no settlement agreement saying if I don't get this provision, you can't have that provision. That's just not in the record. There was no testimony at the hearing approving this settlement motion where either the trustee said I'm bargaining for that or the lender said we've bargained for that. We've got a lot of argument from counsel and I understand it. It sounds great when you hear counsel argue it, but it's not a factual finding in the record supported by evidence in the record. And, you know, I guess that's where we've got a problem is we've always viewed these as divisible. We've always thought you could finance HVAC repairs, you could sell the property, but that's not something that prevents a bankruptcy court from adjudicating a claim amount. That's something a bankruptcy court does all the time. And to go to the Chapter 11 context— But surely you don't think that the equivalence of a claim amount and the price was an accident, right? I know that they were looking at those things because they were having ongoing discussions, but at the same time there were nine objections, motions to disallow claim and briefs to disallow claim. At the same time they're talking about that, and not just my client, the trustee opposed the claim amount and another creditor opposed the claim amount. So in the context of the whole case, there was a lot of argument about whether the amount of this claim was valid or invalid and what effect that had on other parties. So what they were doing in isolation did not take away from other parties saying, wait a minute, that claim amount's not valid. They knew that was the subject of a dispute from others, not just between the trustee and the lender. But are you the only one of all of those parties you just identified who has pushed this issue even farther in terms of an appeal? Correct. Okay. Which I think there were other resolutions that other parties have had their own resolutions, but that shouldn't in any way detract from my clients who've laid out in detail how they think they're harmed up to the tune of $600,000. But what you just described in terms of that fact scenario suggests that your interests, to some extent, were represented during the negotiations. It just didn't work out in your favor. No, I don't think our interests were represented. We were opposed to that resolution. We disagreed that the claim amount should have been allowed at $3.999 million because we contended the maximum amount was about $600,000 lower than that. That was, in our mind, a private deal between the trustee and this lender, not representative of what we wanted to have happen with the claim resolution. And just to briefly touch on the motion to supplement the record, the guarantees are not in the record. They made a motion to put them in the record. It's not something the district court looked at, not something that was briefed or considered by the district court. And the guarantees actually say that my clients do have a subrogation right, a subordination right, once the amount of the debt has been paid, which we contended was paid by the credit bid, that that satisfied the full amount of the debt, and there's an overbid. So we contend they're standing based on that alone. Okay. Very well. Thank you. Complicated case. We appreciate your presentations.